UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY S.,[1]<br><br>*Plaintiff*,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY<br><br>*Defendant*. | No. 3:21-cv-01313 (MPS) |

**RULING ON PENDING MOTIONS**

In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff, Mary S., was not disabled under the Social Security Act ("SSA") from September 13, 2019, through December 29, 2020, and therefore denied benefits for this period. Plaintiff appeals the Commissioner's denial of benefits, challenging the ALJ's evaluation of Plaintiff's testimony about her symptoms and his finding that she could perform her past relevant work. Because I find that the ALJ's decision on these issues was supported by substantial evidence and free of the legal errors claimed by Plaintiff, I grant the Commissioner's motion to affirm the decision, ECF No. 29, and deny Plaintiff's letter motion to reverse, ECF No. 27.

**I.   FACTUAL BACKGROUND**

I assume familiarity with Plaintiff's medical history, as summarized in the Commissioner's brief, ECF No. 29-2 at 1-6, which I adopt and incorporate by reference. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01, (D. Conn. Jan. 8, 2021).

1

ALJ's opinion, and the record.[2] I cite only those portions of the record and the legal standards necessary to explain the ruling.

## II. STANDARD OF REVIEW

The Court "may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence' - that is, if no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review — even more so than the clearly erroneous standard . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn . . . If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld . . . The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*

*Id.* at 74 (internal quotation marks and citations omitted, emphasis in original); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("Substantial evidence" means "more than a mere scintilla") (quotation marks omitted).

## III. DISCUSSION

Plaintiff was represented by counsel in the agency proceedings below. R. 15 (Plaintiff was represented before ALJ "by James F. Aspell, an attorney"); R. 91 (fee agreement with Aspell); R. 259-60 (Aspell submitting letter to Appeals Council). Plaintiff now, however, appeals the Commissioner's denial of Title II benefits pro se. In the Second Circuit, "[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (alterations in original, quotation marks omitted). This standard "applies to requests

---

[2] Citations to the administrative record, ECF No. 18, appear as "R." followed by the page number appearing in the bottom right hand corner of the record.

for review of the denial of Social Security benefits." *Maya I.D.F. v. Commr. of Soc. Sec.*, 1:21-CV-03617-GRJ, 2022 WL 4298729, at *3 (S.D.N.Y. Sept. 19, 2022). Plaintiff submitted a one-page "memorandum of law (letter) to explain why . . . the denial of [her] social security disability benefits should be reversed." ECF No. 27 at 1. She states that she "is unable to perform daily activities of living without assistance," including "most things that require finger or hand dexterity," and that "it is extremely challenging, and at times frustrating," for her "to type on computers like [she] was once able to do so proficiently." *Id.* She also notes that her "writing hand fatigues quickly" and that her "hands' reduced coordination" means that her "family members . . . have to do a lot of the tasks that [she] was able to do" in the past. *Id.* Because of these alleged symptoms, Plaintiff argues that she is "physically unable to work in the field that [she] was trained for." *Id.* In her reply to the Commissioner's motion to affirm, Plaintiff again asserts that the ALJ's decision denying her disability benefits should be reversed because Plaintiff has "daily issues . . . with [her] hands, fingers and arms, and much they have deteriorated," such that her "disability has hindered [her] of what [she] once did for employment." ECF No. 33 at 1.

When I construe Plaintiff's letters to raise the strongest arguments they suggest, I find that Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence because the ALJ improperly evaluated Plaintiff's testimony about her symptoms (the substance of which is repeated in her letters); and (2) that the ALJ's determination that Plaintiff could perform her past relevant work was not supported by substantial evidence because the ALJ relied on an erroneous RFC. Plaintiff does not challenge the ALJ's step one, two, and three determinations, and the ALJ did not reach step five, so I analyze only the ALJ's decision on step four.

### A. The RFC Finding

In her memorandum of law, Plaintiff primarily repeats allegations she made in her hearing testimony about the intensity, persistence, and limiting effects of symptoms related to her medical conditions. *See* ECF No. 27 at 1. I construe that portion of her memorandum of law as arguing that the ALJ incorrectly determined Plaintiff's RFC by not adequately weighing Plaintiff's hearing testimony about her functional limitations — either by failing to account for it, improperly attributing less weight to it than to other evidence, or incorrectly finding that it was inconsistent with the medical evidence.

"[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citation and internal quotation marks omitted). I "must affirm an ALJ's RFC determination when it is supported by substantial evidence in the record." *Barry v. Colvin*, 606 Fed. App'x 621, 622 n.1 (2d Cir. 2015) (summary order) (citations omitted). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision[.]'" *Cichocki*, 729 F.3d at 178 n.3 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Based on the entire record, including Plaintiff's hearing testimony, the ALJ found that during the relevant period,

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and/or carry 10 pounds occasionally and 10 pounds frequently and she can stand and/or walk with normal breaks for a total of two hours in an eight hour workday with the ability to use a hand-held assistive device for ambulation as needed; and to sitting with normal breaks for a total of six hours in an eight hour workday. She is able to perform occasional pushing or pulling or operating of foot controls with the bilateral lower extremities and she

> may perform occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling but she may never climb ladders, ropes, or scaffolds. She can perform occasional overhead reaching with the bilateral upper extremities and frequent handling or fingering. There should be no more than occasional exposure to vibration and no exposure to hazards such as heights or machinery.

R. 19.[3] When the ALJ determined Plaintiff's RFC, he followed the "two-step process for evaluating a claimant's assertions of pain and other limitations" required by the governing regulations. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, the ALJ must "decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). The ALJ here decided that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." R. 20. Second, the ALJ must consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Genier*, 606 F.3d at 49 (internal quotation marks omitted). Here, the ALJ found at the second step that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the" record evidence that he thoroughly examined under the relevant regulatory standard. R. 20.[4]

---

[3] I note that the ALJ found that Plaintiff was limited to lifting and/or carrying 10 pounds both occasionally and frequently. R. 19. The ALJ separately considered Plaintiff's ability to lift and/or carry both occasionally and frequently because the regulations require the ALJ to determine Plaintiff's exertional ability at the RFC stage before comparing it to "the physical exertion requirements" of Plaintiff's past work and, if necessary, "work in the national economy." 20 CFR § 404.1567. To do this, the ALJ must compare Plaintiff's limitations to jobs that are classified in the "Dictionary of Occupational Titles, published by the Department of Labor" as either "sedentary, light, medium, heavy, [or] very heavy," and each classification involves different restrictions on frequent and occasional lifting. *See, e.g., id.* (sedentary work involves "lifting no more than 10 pounds at a time" occasionally and no frequent lifting and/or carrying, whereas light work involves occasional lifting of no more than 20 pounds and frequent lifting and/or carrying "of objects weighing up to 10 pounds"). The ALJ thus made separate findings about Plaintiff's ability to lift and/or carry occasionally and frequently at the RFC stage because he found that plaintiff's lift/carry capabilities were not identical to one of the five work classifications from the Dictionary of Occupational Titles; he made separate findings so that he could — with the assistance of a vocational expert — adequately compare Plaintiff's exertional limitations to the work classifications from the Dictionary of Occupational Titles at step four.
[4] This standard requires the ALJ to consider Plaintiff's daily activities; the duration, frequency and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; any treatment other than medication and measures used to relieve the symptoms; and functional restrictions. 20 C.F.R. § 404.1529(c)(3).

The ALJ considered Plaintiff's hearing testimony "that the limitations she had from her impairments prevented her from working due to pain, tingling, and numbness in her hands and arms." R. 20; R. 39 (Plaintiff testified that "every day, it was just tingling and numbness and sho[o]ting pain in the left arm and the top of the right arm"). This included Plaintiff's testimony that she "has not lifted any weight since her surgery" in 2017, that "she could not feel the items in her hands that she tries to grab . . . [,] that her daughter helps her tie up her hair and put in her earrings . . . [, and] that her son also assists her with daily activities." R. 20; R. 39-40 (Plaintiff testified that she was "not lifting any weight right now," that her "hands are just not working like they used to," and that her daughter and son assist her with certain daily activities). The ALJ also considered Plaintiff's testimony that she had "intermittent balance problems" and that "her knee has given out, at times." R. 20; R. 41 (Plaintiff testified that her balance problem is "intermittent, but it does happen," and that her knee gave out recently but "that hasn't happened in a while"). And the ALJ considered Plaintiff's testimony that "she uses a straight cane, a four-prong cane, and a walker," but that Plaintiff uses these implements only "once or twice a month." R. 20; R. 42 (Plaintiff testified that she uses a cane "once or twice a month"); 43-44 (Plaintiff testified that she has a straight cane, four prong, and walker). The ALJ partially credited this testimony, accepting that Plaintiff's "impairments do limit her overall level of functioning" and that she "has some limitations," incorporating those limitations in the RFC by including in the RFC "the finding for sedentary work" and "postural and environmental limitations as well as manipulative restrictions for frequent handling and fingering and occasional overhead reaching with her upper extremities." R. 20.

But the ALJ ultimately found that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record," concluding that "the medical evidence of

record does not demonstrate that [Plaintiff] has had the significant limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensory loss, or reflex abnormalities associated with intense and disabling pain." R. 20. The ALJ noted that Plaintiff underwent "cervical decompression laminectomy and fusion in March 2017." R. 20; R. 642-44. The record evidence reviewed by the ALJ shows that soon after this surgery, in September 2017, Plaintiff's surgeon stated that Plaintiff "had significant improvement of her left arm pain" and was "now ready to return back to work" with a lifting restriction of 10 pounds. R. 644; *see also* R. 319-20 (at Plaintiff's final post-surgery physical therapy appointment in September 2017, she had shown "great improvement in active range of motion of the arms" and "passive range of motion is near normal," such that she "is independent with a home exercise program . . . [and] should continue to do well and gain function if she remains compliant"). In April 2018, a post-surgery examination "showed no neck pain and x-rays from March 2018 showed no instability." R. 20; R. 650 (Plaintiff "has minimal to no neck pain" and "[h]er cervical spine x-ray shows excellent fusion").

And the ALJ observed that some of Plaintiff's examination records from the years after her surgery showed "some loss of strength in the upper extremities," which was factored into the RFC, but that many of Plaintiff's medical examinations recorded Plaintiff's upper extremity "strength [as] normal or 5/5." R. 21; *e.g.,* R. 412-13 (September 2018 examination noting "[s]trength 5/5 throughout" with no tremor and normal results on the sensory evaluation); R. 420 (April 2018 examination noting "Strength 5/5 except . . . [l]eft deltoid: 4/5" and no tremors); R. 620 (February 2020 examination noting "no deficit to strength in upper extremities"); R. 638-39 (June 2020 examination noting normal coordination, normal reflexes, and 4/5 strength in Plaintiff's shoulder, elbow, and wrist). Nor did Plaintiff report any severe upper extremity pain

7

or weakness after she fell in 2018. R. 410 (September 2018 examination where Plaintiff "denies any loss of strength" and "denies any severe neck pain or upper extremity weakness"). The ALJ also noted that Plaintiff's "musculoskeletal examinations were largely normal with normal gait." R. 21; *e.g.,* R. 412-13 (September 2018 examination noting Plaintiff had no tremor and normal results on the sensory evaluation); R. 439 (October 2019 examination noting Plaintiff's "[a]rm strength is normal and equal bilateral" and "[p]roximal leg strength is 4/5 bilaterally"); R. 638-39 (June 2020 examination noting Plaintiff had normal reflexes, coordination, and gait). The ALJ did, however, include limitations on Plaintiff's upper extremity use in the RFC based in part on record evidence that showed "chronic, right-sided, C5-C7 radiculopathy with mild ongoing denervation, chronic, left-sided C7-C8 radiculopathy without ongoing denervation and moderate degree, right-sided, median neuropathy at the wrist." R. 21; R. 504 (October 2018 x-ray of cervical spine showed "postoperative and degenerative change without acute osseous abnormality or dynamic instability" and MRI showed "mild loss of vertebral body height at T2 and L1"); R. 602 (electromyography from February 26, 2020 showing radiculopathy); R. 637 (consultative examination in June 2020 noted Plaintiff had "[d]ifficulty grasping things with [right] hand due to tingling and numbness").

    The ALJ agreed with Plaintiff that she had "some complications" from her "cervical spine disorder and her increased weight," but determined that these complications were controlled by medication and routine medical visits. R. 21; *e.g.*, R. 439 (in October 2019 Plaintiff tried "a lidocaine patch on her left arm paresthesias and found it helpful"); R. 445 (plaintiff was given a steroid injection "for pain and weakness in her right knee" and "it seemed to have helped for the past several months"); R. 618 (routine visit in March 2020 where Plaintiff "f[ound] the oxycodone useful" in treating "discomfort in both of her arms" and reported "using medical

8

marijuana," which "[wa]s of some help with her neuropathic pain"); R. 665-66 (routine telehealth visit in June 2020 where Plaintiff's pain, paresthesias, hypertension, and diabetes were controlled by medication, including "gabapentin and medical marijuana and oxycodone . . . [and] lisinopril," and ordering follow-up visit in 3 months). The ALJ's comprehensive review of the medical evidence supports his determination that Plaintiff's self-described symptoms were not completely consistent with the record.

In addition to the medical evidence, the ALJ noted that Plaintiff's own testimony contradicted certain aspects of her described disabling symptoms during the relevant period. Plaintiff's testimony revealed that she "functions independently." R. 21. For example, Plaintiff was able to drive herself to various locations, R. 41 (Plaintiff had her own vehicle she uses), and volunteer intermittently at her church, R. 37-38 (Plaintiff testified that she "would help out in [her] church as much as [she] could but not on a regular [basis]," including distributing paper bulletins into the slots from which parishioners take them). And though Plaintiff owned canes and a walker to assist her ambulation, she testified that her "walker is in the basement" because it was something that she had not "had to use," and that she did not regularly use any of her assistive devices but kept "them readily available, just in case." R. 43; R. 42 (Plaintiff testifying that she used her cane "maybe once or twice a month"). The ALJ reasonably concluded based on Plaintiff's testimony that if Plaintiff required "a cane or other assistive device for balance that she would require the use of it on a daily basis." R. 21.

In sum, there is substantial evidence in the record supporting the ALJ's RFC determination and his decision to credit only partially Plaintiff's hearing testimony.[5] It was

---

[5] Plaintiff does not challenge the ALJ's consideration of the medical opinions in the record. R. 21-22. The ALJ considered the opinions of three different doctors, discussed their persuasiveness based on their supportability and consistency, and found Plaintiff's RFC to be substantially similar to the "State Agency medical doctor residual physical functional capacity assessment from the reconsideration level determination" because this opinion was

9

Plaintiff's duty "to prove a more restrictive RFC," and here she "failed to do so." *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (unpublished); *c.f. Barry v. Colvin*, 606 Fed. Appx. 621, 622 (2d Cir. 2015) (unpublished) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

To the extent that Plaintiff challenges the ALJ's RFC determination by contending that the ALJ failed to account for her hearing testimony in his RFC determination, this challenge fails because the ALJ clearly addressed Plaintiff's testimony, compared it with the medical evidence in the record, and incorporated limitations in the RFC based on Plaintiff's testimony. R. 20-21. If Plaintiff instead challenges the ALJ's finding that Plaintiff's alleged symptoms were not adequately supported by the objective medical evidence, I cannot find that the ALJ erred in doing so in light of the "very deferential standard of review." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). And if Plaintiff argues that the ALJ improperly weighed her testimony and credibility, I cannot find error in the ALJ's assessment because "[t]he Commissioner is not obligated to accept without question a claimant's testimony about her limitations and symptoms, but has discretion to evaluate the claimant's credibility in light of the evidence in the record." *Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order). As the ALJ noted, there were contradictions in the Plaintiff's testimony and the testimony was undermined by the substantial medical evidence he cited. Reviewing courts must "defer to the Commissioner's resolution of conflicting evidence," especially when resolving this conflict

---

supported by "the objective medical evidence of record," including recent medical records from 2020. R. 22; *see* R. 79-85 (reconsideration opinion finding Plaintiff could "occasionally lift and/or carry" and "frequently lift and/or carry" 10 pounds, that Plaintiff could "stand and/or walk" for 2 hours with normal breaks and the use of a "hand-held assistive device," that she could sit for about "6 hours in an 8 hour workday," and noting other functional limitations that were incorporated in the ALJ's RFC). This opinion provides further support for the ALJ's RFC finding.

involves credibility determinations that the ALJ, who heard Plaintiff's testimony, is better positioned to make than a reviewing court. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). I cannot now reweigh the evidence or overturn the ALJ's reasonable resolution of conflicting evidence. I thus find that the ALJ's RFC determination and decision not to credit entirely Plaintiff's hearing testimony is supported by substantial evidence.

### B. Past Relevant Work

At step four, the ALJ determined that Plaintiff can "perform her past relevant work as an insurance clerk" after considering Plaintiff's RFC and the testimony of a vocational expert. R. 23. Plaintiff argues that she is "physically unable to work in the field that [she] was trained for," which I construe as a challenge to the ALJ's determination at step four that Plaintiff could work as an insurance clerk. ECF No. 27 at 1.

The ALJ may "rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion" and the testimony accurately reflects "the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citations and internal quotation marks omitted). "When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." *Snyder v. Colvin*, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order). As stated above, the ALJ's RFC finding is supported by substantial evidence. The ALJ's second hypothetical to the vocational expert is substantially identical to the RFC — it contains the same limitations as the RFC, stated less concisely. *See* R. 61-62. The vocational expert testified that a person with the limitations in the second hypothetical could perform Plaintiff's past work as an insurance clerk.

R. 62. Because I "find no error in the ALJ's RFC assessment, [I] likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (summary order) (citation omitted). The ALJ's determination that Plaintiff could perform her past relevant work is thus free of the error claimed by the Plaintiff.

## IV.     CONCLUSION

For these reasons, the Plaintiff's Motion to Reverse (ECF No. 27) is DENIED and the Commissioner's Motion to Affirm the Decision (ECF No. 29) is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           March 27, 2023